STEAGALL, Justice.
David Powell, individually and as administrator of the estate of Sonia Powell, joined others in filing, a wrongful death action against Gulf Gate Management Corporation (hereinafter “Gulf Gate”) and George Bode and Scott Bode, both individually and as the directors of Gulf Gate. The plaintiffs alleged negligence, wantonness, and violations of the Dram Shop Act.. David Powell alleged that the Bodes sold alcohol to an individual who was already intoxicated and who subsequently caused an automobile accident that resulted in Sonia Powell’s death. The defendants filed a third-party complaint against Alliance Insurance Group (hereinafter “Alliance”), alleging breach of contract, fraud, bad faith, negligence, and wantonness, arising out of Alliance’s denial of insurance coverage to the defendants in the wrongful death action. The trial court entered a summary judgment for Alliance, holding that the policy had expired before the accident and that, in any event, the policy did not provide coverage for the defendants in the wrongful death action. The court made that summary judgment final pursuant to Rule 54(b), A.R.Civ.P. Gulf Gate and the Bodes appealed.
A summary judgment is proper where there exists no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. Rule 56(c)(3), A.R.Civ.P.
The Bodes are the sole stockholders and directors of Gulf Gate, which they incorporated to operate Gulf Gate Lodge, a restaurant and bar. In January 1990, Gulf Gate applied for a general liability insurance policy from Alliance, through the Norwood Agency, an independent insurance company. The Nor-wood Agency procured the Alliance coverage through Burns & Wilcox, a wholesale insurance brokerage firm. Alliance billed Burns & Wilcox, which paid for the coverage and in turn billed the Norwood Agency. Gulf Gate paid the Norwood Agency 25% down on the Alliance policy and then gave the Norwood Agency a promissory note to finance the remainder of the premium price. The financing agreement provided that the Nor-wood Agency would pay the premium amount to Burns & Wilcox and that Gulf Gate would repay Norwood Agency in monthly installments of $872.11, due on the first day of each month. The agreement provided, in pertinent part:
“The Assured hereby assigns to the Agency as security for the payment of the amount owing hereunder, all unearned or return premiums and dividends at any time payable on said policies, and as like security assigns to the Agency said policies and all losses payable thereunder, if any.
“The Agency is hereby constituted and appointed the irrevocable attorney in fact of the Assured to cancel and/or terminate and give notice of cancellation and/or termination of said policies and to collect or. receive in the Agency’s own name all unearned and return premiums and dividends thereon and losses payable thereunder, if any. Every power herein conferred upon the Agency is coupled with an interest and is irrevocable by death or otherwise.
“In the event that default be made in payment to the Agency of any installment or portion of any installment herein provided and such default shall continue for ten (10) days, ... or should any policy held hereunder be cancelled either by the Assured or the insurance company, the full amount then owing hereunder shall, at the option of the Agency become due and payable without notice, and in any such event, the Agency shall have and is hereby given the right to cancel and/or terminate said policies and collect■ and receive all un *864 earned, or return premiums and dividends thereon and the proceeds of any loss thereunder, retain the amount owing hereunder and remit any surplus to the Assured. The Assured agrees that default in payment of any installment or any portion of any installment hereof for a period of ten (10) days shall be deemed to be a request for cancellation and/or termination of said policies by the Assured and for notice of such cancellation and/or termination to be given by the Agency to said insurance companies issuing said policies. ...
“Said insurance companies are hereby authorized and directed, upon the demand or request of the Agency, to cancel or terminate said policies and upon termination or cancellation thereof by the Assured, the insurance company or the Agency to pay the Agency the unearned or return premium and dividends thereon without proof of default hereunder or breach hereof or of the amount owing hereunder; and in case of loss under said policies whereby the amount of the unearned or return premiums is reduced, to pay such loss to the Agency as security for the amount owing to the Agency hereunder. Said insurance companies are hereby authorized to rely upon all statements made by the Agency as to the occurrence or continuance of default, the amount owing hereunder, and as to every other matter pertaining to this contract and said policies.
“In the event any unearned or return premium paid to the Agency by said insurance companies is less than the unpaid balance due hereunder, the Assured shall be liable to the Agency for any deficiency.
[[Image here]]
“This contract may be assigned by the Agency at any time. The provisions hereof are binding upon the heirs, executors, administrators, successors and assigns of the Assured and shall inure to the benefit of the Agency, its successors and assigns.”
(Emphasis added.) The agreement thus specifically provided that, in the event of default or late payment, the Norwood Agency had the right to direct Burns & Wilcox to cancel the Alliance policy and obtain a refund of unearned premiums, which Burns & Wilcox would then pay to Norwood Agency to apply to the balance Gulf Gate owed on the note. The agreement authorized and directed Alliance to cancel the policy at the direction of the Norwood Agency or its assignee acting through Burns & Wilcox. In January 1990, Norwood Agency assigned the Gulf Gate premium-financing note and contract, with recourse, to First Alabama Bank.
In each month from February 1990 through July 1990, Gulf Gate was late in paying the installment on its note with the Norwood Agency. In July 1990, the Nor-wood Agency enforced the default and cancellation provisions of its premium-financing agreement with Gulf Gate and directed Burns & Wilcox to contact Alliance and cancel the Gulf Gate policy for nonpayment of premiums. Burns & Wilcox complied and sent notice of the cancellation to Gulf Gate on August 1, 1990, stating that the policy would be terminated as of August 12,1990. George Bode sent a letter to Alliance on August 7, 1990, acknowledging his receipt of the cancellation.
On September 18, 1990, Alliance issued a credit memo in the amount of $1,152.60 to Burns & Wilcox as a refund of unearned premiums that it had received from Norwood Agency for the Gulf Gate liability policy. A week later, the Norwood Agency wrote Burns & Wilcox to inform the company that Gulf Gate had satisfied the default and to ask Burns & Wilcox to have Alliance reinstate the policy. In October 1990, Burns & Wilcox attempted to do so; however, Alliance refused to reinstate the policy because two months had elapsed siriee its cancellation. Alliance did offer to rewrite the policy if Gulf Gate provided it with certain underwriting information, but Gulf Gate did not do so.
On November 11, 1990, a patron of Gulf Gate Lodge drank alcoholic beverages at that establishment and left the premises intoxicated; she subsequently caused a motor vehicle accident that resulted in Sonia Powell’s death. Alliance refused to defend Gulf Gate in the ensuing wrongful death action, stating that the policy was not in effect at the time of the accident and that the policy had had a liquor liability exclusion.
*865 The dispositive issue is whether the trial court properly held that Gulf Gate’s policy had been canceled before the accident that killed Sonia Powell.
Gulf Gate argues that Alliance could not terminate the policy for nonpayment of premiums because it had already received the full amount of the premium from the Nor-wood Agency, through Burns & Wilcox, and had retained the premium even after Gulf Gate defaulted on its payments to the Nor-wood Agency. Gulf Gate points out that where an insurer accepts and retains a premium after knowledge that the insured has breached a policy condition that would otherwise entitle the insurer to cancel the policy, the insurer waives its right to cancel the policy. Nationwide Mutual Insurance Co. v. Clay, 525 So.2d 1339 (Ala.1987), cert. denied, 488 U.S. 1040, 109 S.Ct. 863,102 L.Ed.2d 988 (1989).
We find Gulf Gate’s reliance on the doctrine of waiver to be misplaced here. Alliance did not collect monthly premiums from Gulf Gate, nor did it cancel the policy of its own accord. The Norwood Agency bought the policy from Alliance, paid the full premium amount, and then collected monthly payment installments from Gulf Gate as repayment pursuant to the premium-financing agreement. This agreement specifically provided that Gulf Gate’s failure to make its monthly payments within 10 days of the due date gave the Norwood Agency the irrevocable right to cancel the policy for nonpayment. The agreement made the Norwood Agency the general agent of Gulf Gate and thereby gave the Norwood Agency the same right to cancel the policy that Gulf Gate had. See Green v. Standard Fire Insurance Co. of Alabama, 477 So.2d 333 (Ala.1985). When Gulf Gate failed to make timely payments on the note for five consecutive months, the Norwood Agency and its assignee, First Alabama Bank, acted under Gulf Gate’s authorization to cancel the policy and receive a refund of unearned premium from Alliance in satisfaction of the debt. Alliance was obliged to follow the orders of the Norwood Agency and First Alabama Bank, just as it would follow orders from Gulf Gate itself. In view of this, the trial court correctly held that the policy had been canceled before the accident and that Alliance therefore had no duty to defend Gulf Gate in the wrongful death action that resulted from the accident. We need not discuss the remaining issues before us. The trial court’s judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES and INGRAM, JJ., concur.